

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-13-2007

# Chung v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2200

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Chung v. Atty Gen USA" (2007). *2007 Decisions*. Paper 948.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/948

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

Case No:  06-2200

EDWARD CHUNG,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

———————

On Petition for Review of Final Decision of the Board of Immigration Appeals
BIA No. A36-360-060
Immigration Judge:  Hon. Walt Durling

———————

Submitted under Third Circuit LAR 34.1(a)
June 7, 2007

BEFORE:  SMITH and GREENBERG, *Circuit Judges*, and
POLLAK,* *District Judge*

(Filed: June 13,  2007)

———————

OPINION

———————

SMITH, *Circuit Judge*.

---

*Honorable Louis H. Pollak, Senior Judge of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

Edward Chung is a native and citizen of Guyana. He entered the United States on November 12, 1977. Chung had four children in the United States and became a legal permanent resident. Chung testified that he returned to Guyana in 1978 to get married, but has otherwise had no contact with Guyana since his arrival in the United States.

On November 1, 2004, Chung was indicted in the United States District Court for the District of New Hampshire on five counts of distributing cocaine base. Chung pled guilty to all five counts. The District Court sentenced him to thirty-seven months' confinement, three years of supervised release, and a $500 assessment.

The Department of Homeland Security charged Chung with removability due to his conviction for an aggravated felony, 8 U.S.C. § 1227(a)(2)(A)(iii), and for illicit trafficking in a controlled substance. *Id*. at § 1227(a)(2)(B)(i). Chung conceded removability and sought protection under the Convention Against Torture ("CAT"), claiming that criminal deportees to Guyana were routinely held indefinitely or targeted by death squads.

On November 7, 2005, an immigration judge ("IJ") denied Chung's claim for relief under the CAT and ordered him removed to Guyana. The Board of Immigration Appeals ("BIA") adopted and affirmed the IJ's decision.

Chung testified that many criminal deportees are tortured or murdered upon their return to Guyana. Chung stated that returning criminal deportees are monitored and their pictures are placed in newspapers. Chung claimed that it was "possible" that he would be targeted by death squads if he was removed to Guyana, although he did not know of

2

anyone who had been killed after deportation. Chung testified that before deportees are released, someone must sign for them. As Chung has no family in Guyana, he claimed that he could be detained indefinitely and tortured, particularly if his captors felt that they could extract money from him.

We generally have jurisdiction over petitions to review final orders of removal. 8 U.S.C. § 1252. However, Chung has committed an aggravated felony within the meaning of 8 U.S.C. § 1227(a)(2)(A)(iii). Therefore, we may only "review constitutional claims and questions of law [which] includes review of the BIA's application of law to undisputed fact." *Singh v. Gonzales*, 432 F.3d 533, 541 (3d Cir. 2006) (internal citation omitted); *see Kamara v. Attorney General*, 420 F.3d 202, 211 (3d Cir. 2005) ("[W]e are limited to pure questions of law and to issues of application of law to fact, where the facts are undisputed and not the subject of challenge." (internal citations and quotations marks omitted)).

We held in *Kamara v. Attorney General* that we could reach the merits of an aggravated felon's CAT claim when "[t]he BIA's erroneous application of the regulations is evident in its opinion." 420 F.3d at 214. In *Kamara*, the IJ granted CAT relief but was then overturned by the BIA. *Id.* at 213-14. The IJ's findings of fact were undisputed. *Id.* However, we vacated the BIA's decision as they had improperly applied to the stipulated facts the requirement that the petitioner show that "it is more likely than not that he faces torture by a public official" to establish a claim for relief under the CAT. *Id.* at 213. We also reached the merits of a CAT claim made by a criminal deportee to Haiti because

3

"[t]he question [there] involve[d] not disputed facts but whether the facts, even when accepted as true, sufficiently demonstrate[d] that it [was] more likely than not that she will be subject to persecution or torture upon removal to Haiti." *Toussaint v. Attorney General*, 455 F.3d 409, 412 (3d Cir. 2006).

It is apparent from Chung's brief, which did not address the jurisdictional issue, that he is challenging the IJ's factual determinations. Chung alleged that he would be held indefinitely upon his return to Guyana because he has no family there to sign for him and effect his release. The IJ found, however, that Chung had failed to meet his burden to establish this fact, as "it is not quantifiable from the evidence that he is likely to be detained for any length of time other than for airport processing upon his arrival." The IJ made a similar finding with respect to Chung's argument that he would be targeted by death squads. Chung also contended that returning criminal deportees were targeted and detained indefinitely because they had committed crimes in other countries. The IJ found the record did not support this contention. The IJ allowed that both indefinite detention and targeted murder may occur, but were linked to criminal activity by deportees after their return.

These disputed issues of fact lie beyond our jurisdiction, unlike the questions of law, and of law applied to undisputed fact, in *Toussaint* and *Kamara*.

Chung also alleges that the BIA violated his rights to due process by erroneously attributing conclusions of fact to the IJ and by citing "inapplicable law." The BIA did neither. The BIA's statements that the death squads were acting outside the scope of

4

government authority and that targeting was linked to ongoing criminal activity are both supported by the IJ's findings.  The Board's citations to their own and to our precedents were appropriate and relevant.  Chung understandably disagrees with the BIA's conclusion, but "the question for due process purposes is not whether the BIA reached the *correct* decision; rather, it is simply whether the Board made an individualized determination of [Chung's] interests." *Abdulai v. Ashcroft*, 239 F.3d 542, 550 (3d Cir. 2001).  The BIA did not violate Chung's due process rights because it relied only on facts found by the IJ, gave him the opportunity to present arguments on his behalf, and examined his individual claim. *See id*. at 549.

We will deny the petition for review.