

Villanova University School of Law Digital Repository

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-26-2006

# Toussaint v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 05-3311

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Toussaint v. Atty Gen USA" (2006). *2006 Decisions.* Paper 644.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/644

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-3311

———

EDNA TOUSSAINT,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

———

On Petition for Review of a decision and order of
the Board of Immigration Appeals
(BIA No. A30-139-224)

———

Argued June 13, 2006

BEFORE: FISHER, GREENBERG, and LOURIE,* Circuit Judges

(Filed: July 26, 2006)

———

Ruchi Thaker
Matthew L. Guadagno (argued)
Jules E. Coven
Kerry W. Bretz
Bretz and Coven
305 Broadway
Suite 100
New York, NY 10007

———

*Honorable Alan D. Lourie, United States Circuit Judge for the
Federal Circuit, sitting by designation.

Attorneys for Petitioner

Peter D. Keisler
Assistant Attorney General
Civil Division
Richard M. Evans
Assistant Director
David E. Dauenheimer
Carl H. McIntyre, Jr. (argued)
Senior Litigation Counsel
United States Department of
Justice
Office of Immigration Litigation
Ben Franklin Station
P.O. Box 878
Washington, DC 20044

Attorneys for Respondent

---

OPINION OF THE COURT

---

GREENBERG, Circuit Judge.

## I. INTRODUCTION

Edna Toussaint petitions for review of a final decision and order of the Board of Immigration Appeals ("BIA") issued on January 6, 2003, ordering her removal to Haiti. In reaching its decision the BIA reversed a decision and order of an immigration judge ("IJ") granting Toussaint withholding of removal under the Immigration and Nationality Act ("INA") and under the Convention Against Torture ("CAT"). We will deny the petition for review.

## II. FACTS AND PROCEDURAL HISTORY

Toussaint was born in Haiti in 1954 but entered the United States as a lawful permanent resident in 1970 and since has not returned to Haiti. She is a widow whose husband died in 1992, and she has six children who live in the United States and are United States citizens.

2

In March 2001 the Supreme Court of the State of New York convicted Toussaint on two counts of criminal sale of a controlled substance (cocaine) and one count of attempted criminal sale of a controlled substance (cocaine) causing the Immigration and Naturalization Service ("INS") to initiate removal proceedings against her. In those removal proceedings, which led to the petition in this case, Toussaint conceded her removability but sought asylum and withholding of removal under the INA and protection under the CAT. Toussaint predicated her claim on an assertion that she would be persecuted and mistreated on account of her deceased father's and her political views if she returned to Haiti.[1] In this regard she claimed that her father, who had been an official in the former Duvalier regime in Haiti, had been detained and tortured in a Haitian prison from 1988 to 1996. Toussaint also said that she "ha[d] been threatened with death were [she] to return to Haiti" by two unidentified men in Miami, Florida. In her application for asylum, however, she did not explain the reason the men gave for making these statements beyond indicating that it was because of her "political views." See J.A. at 226.

The original IJ entertaining this matter found that Toussaint was ineligible for relief because she had committed "particularly serious" crimes, but he nevertheless agreed to consider further the issue of deferral of removal. J.A. at 88. At a subsequent hearing, however, a different IJ ruled that Toussaint's offenses were not particularly serious, and thus he considered her claims for asylum and withholding of removal on the merits.[2] The second IJ ultimately denied her claim for asylum but granted her claim for withholding of removal under section 241(b)(3) of the INA, 8 U.S.C. § 1231(b)(3), and, alternatively, granted Toussaint withholding of removal under

_____

[1]Both of these possibilities seem to have been mentioned in these proceedings, but inasmuch as Toussaint left Haiti when she was about 16 years old, more than 30 years before the INS initiated these proceedings, we believe that her troubles are derivative to those of her father. In any event, the distinction does not impact on our outcome.

[2]Noncitizens convicted of "particularly serious" crimes are excluded from eligibility for withholding of removal. See INA § 241(b)(3)(B)(ii); 8 U.S.C. § 1231(b)(3)(B)(ii). The government does not challenge the conclusion of the second IJ that Toussaint's crimes were not particularly serious, and, inasmuch as the parties have not addressed that possible question, we treat the crimes as not particularly serious without deciding the issue.

the CAT. In ordering the withholding of removal, the IJ relied on State Department country reports, Toussaint's "credible testimony" that "[s]he was threatened by men who were aware of her father," J.A. at 50, and prior decisions in which the BIA recognized the "likelihood of torture of criminal detainees [in] Haiti." J.A. at 55. The IJ further explained:

> [I]t's highly dubious that the government of Haiti would alter its de facto policy of ill-treatment by treating this particular respondent [Toussaint] more humanely than other citizens under similar circumstances. I would also note, and this is very important I believe, that [Toussaint] has no family members in Haiti. There is evidence that if a criminal detainee is removed to Haiti and is able to rely on friends, or particularly, family, to bribe the guards . . . it usually leads to the release of that person, primarily through the payment of bribes. [Toussaint] has no one in Haiti to do that for her.

J.A. at 56.

The INS appealed from the decision and order of the IJ to the BIA, which reversed the decision and order of the IJ and ordered Toussaint's removal to Haiti. In reaching its conclusion, the BIA first determined that Toussaint was not entitled to withholding of removal under section 241(b)(3)(A) of the INA because the BIA "was unable to find that it is more likely than not that [Toussaint] will be persecuted on account of an enumerated ground." J.A. at 7. The BIA explained: "The reason for her father's arrest and mistreatment is unclear. We further note that he was released from prison, and apparently lived for approximately 2 more years there without incident." Id. When reaching its conclusion the BIA was aware of Toussaint's testimony that "she was approached in Miami, Florida, by unknown individuals who . . . warned her that she would be in danger if she returns to Haiti." Id. Nevertheless, it explained that it could not "identify any background or compelling testimonial evidence that convinces us that it [is] more likely than not that [Toussaint] will be persecuted in her country." Id. In the final paragraph of its decision, the BIA denied Toussaint relief under the CAT. Id. In this regard it principally relied on Matter of J-E-, 23 I & N Dec. 291 (BIA 2002) (en banc), a decision in which, as it explained in this case, it held that "neither indefinite detention nor inhuman prison conditions in Haiti constitutes torture." J.A. at 7.

Subsequently Toussaint challenged the decision and order of the BIA by filing a petition for a writ of habeas corpus in the United

4

States District Court for the Southern District of New York. Following the enactment of section 106 of the REAL ID Act, the parties appropriately stipulated to the transfer of the habeas petition to this court to be treated as a petition for review.[3]

---

[3]Section 106(a) of the REAL ID Act amended a jurisdictional provision in the INA, 8 U.S.C. § 1252(a)(2), by eliminating district court habeas corpus jurisdiction (28 U.S.C. §§ 2241, 1361, 1651) over final orders of removal in nearly all cases so that an alien may seek review of an order of removal under the INA only by a petition for review filed in the appropriate court of appeals. Moreover, a petition for review filed in the appropriate court of appeals "is the sole and exclusive means for judicial review of any cause or claim under the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman, or Degrading Treatment or Punishment, except as provided in subsection (e) of this section." REAL ID Act § 106(a)(1)(B), 8 U.S.C. § 1252(a)(4).

Although the government does not dispute that we have jurisdiction over this petition to review the decision and order of the BIA, we explain our jurisdiction because, as we recently stated in Romanishyn v. Attorney General, No. 05-3141, 2006 U.S. App. LEXIS 18225, at *8 (3d Cir. July 20, 2006), "[o]ur jurisdiction extends only to constitutional claims and questions of law." (citing 8 U.S.C. § 1252(a)(2)(D)). To start with, we have recognized that "this [jurisdiction] includes review of the BIA's application of law to undisputed fact." Singh v. Gonzales, 432 F.3d 533, 541 (3d Cir. 2006). The question here involves not disputed facts but whether the facts, even when accepted as true, sufficiently demonstrate that it is more likely than not that she will be subject to persecution or torture upon removal to Haiti. In this regard we point out that the REAL ID Act contemplates that a court of appeals can review some administrative findings of fact as it provides that: "[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Therefore, we have jurisdiction to review the BIA's application of law to the facts of this case to determine whether "any reasonable adjudicator would be compelled to conclude to the contrary" of the BIA. See 8 U.S.C. § 1252(b)(4)(B).

In reaching our result on this jurisdictional point, we believe that the government's silence on the issue is significant because it does not hesitate to question a court of appeals' jurisdiction if it is of the view that the court lacks it. In Romanishyn, the government did exactly that.

5

### III. JURISDICTION AND STANDARD OF REVIEW

We review the "BIA's legal decisions de novo, but will afford Chevron deference to the BIA's reasonable interpretations of statutes which it is charged with administering." Kamara v. Attorney General, 420 F.3d 202, 211 (3d Cir. 2005) (citation omitted).[4] We review the BIA's factual determinations under the substantial evidence standard. Dia v. Ashcroft, 353 F.3d 228, 249 (3d Cir. 2003) (en banc). We will affirm the BIA's findings unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

### IV. DISCUSSION

A. Background

Section 241(b)(3)(A) of the INA mandates the withholding of a removal that would threaten an alien's life or freedom on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3)(A). To obtain mandatory withholding of removal under the INA, an alien must "establish by a 'clear probability' that his/her life or freedom would be threatened in the proposed country of deportation." Zubeda v. Ashcroft, 333 F.3d 463, 469 (3d Cir. 2003). "'[C]lear probability' means that it is 'more likely than not' that an alien would be subject to persecution." Id. (citation omitted).

The withholding of removal provisions in the INA were augmented on October 21, 1998, when the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), Pub. L. No. 105-277, Div. G., 112 Stat. 2681-761, 2681-822, authorizing the implementation of Article 3 of the CAT[5] and requiring the applicable

---

See also Hanan v. Gonzales, 449 F.3d 834, 836 (8th Cir. 2006).

In this case venue is proper in this circuit because Toussaint challenged the disposition of removal proceedings completed in York, Pennsylvania. See 8 U.S.C. § 1252(b)(2).

[4]The reference to Chevron is to Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 104 S.Ct. 2778 (1984).

[5]Article 3.1. of the CAT states: "No State Party shall expel, return ('refouler') or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being

agencies to promulgate implementing regulations within 120 days became law. As directed, the Department of Justice, which then included the INS, promulgated regulations setting forth the procedures by which aliens could obtain relief under the CAT. See 8 C.F.R. §§ 208.16(c), 208.17, 208.18(a).

The regulations implementing the CAT provide that "[i]n order to constitute torture, an act must be specifically intended to inflict severe physical or mental pain or suffering. An act that results in unanticipated or unintended severity of pain and suffering is not torture." 8 C.F.R. § 208.18(a)(5). Significantly, the pain and suffering must be "inflicted by or at the institution of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1). The Department of Justice regulations also specify the elements and the burden of proof for a CAT claim. In harmony with the INA, section 208.16(c)(2) provides that "[t]he burden of proof is on the applicant for withholding of removal to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." If an applicant establishes that he or she "more likely than not would be tortured" upon removal to his or her home country, withholding or deferral of removal is mandatory. 8 C.F.R. §§ 208.16(c)(3), (4). The objective evidence to be considered in evaluating a CAT claim includes "[e]vidence of past torture inflicted upon the applicant;" "[e]vidence of gross, flagrant or mass violations of human rights within the country of removal;" and "[o]ther relevant information regarding conditions in the country of removal." See 8 C.F.R. §§ 208.16(c)(3), 208.17(a).

B. Sufficiency of the BIA's Findings

Toussaint argues that the BIA erred in reversing the IJ's grant of relief because the IJ's findings of facts "were different from the finding[s] in Matter of J-E-, [23 I. & N. Dec. 291 (BIA 2002) (en banc)]" on which the BIA relied in this case. Petitioner's br. at 21. According to Toussaint, "the BIA should have, at a minimum, addressed the [IJ's] findings of fact to reconcile the different findings of the [IJ] and Matter of J-E-." Id. at 18. Toussaint primarily claims that in contrast to the findings in J-E, the IJ's finding in this case was that the Haitian authorities "had the intent to inflict[] pain and suffering due to the fact that they deliberately and unlawfully detain and mistreat criminal deportees in order to obtain bribes from the deportees' family members." Id. at 22. Toussaint further claims that the BIA erred in relying on J-E- without considering certain

---

subjected to torture." 1465 U.N.T.S. 114.

7

documentary evidence regarding the inhumane conditions in Haitian prisons.

Generally, "[i]n order for us to be able to give meaningful review to [a BIA] decision, we must have some insight into its reasoning." Awolesi v. Ashcroft, 341 F.3d 227, 232 (3d Cir. 2003). "[W]e are particularly concerned about being able to give meaningful review to the BIA's decision where the BIA reverses the IJ without explanation." Id. at 233 (emphasis in original). Accordingly, the BIA should indicate its reasons for discrediting certain testimony or documentary evidence. See Abdulai v. Ashcroft, 239 F.3d 542, 554-55 (3d Cir. 2001); Sotto v. INS, 748 F.2d 832, 836-37 (3d Cir. 1984). In Awolesi, we vacated a decision and order of the BIA and remanded the case for further consideration when "the BIA reversed the decision of the IJ [granting asylum], with only the opaque explanation that 'the evidence is insufficient' and 'the arguments made by the [INS] on appeal . . . are persua[sive].'" 341 F.3d at 229. We explained that the decision and order precluded us from performing a meaningful review of the removal order inasmuch as "we cannot tell whether the BIA was making a legal decision that [the petitioner] was statutorily ineligible for asylum or whether it found [the petitioner's] story incredible." Id.

We will not hold, however, that a BIA decision is insufficient merely because its discussion of certain issues "could have been more detailed." Sevoian v. Ashcroft, 290 F.3d 166, 178 (3d Cir. 2002). After all, candor requires us to acknowledge that sometimes our own discussions could be more detailed. Rather, the BIA's analysis merely must be adequate to allow for meaningful review of the BIA's decision, and "the BIA is not required to write an exegesis on every contention." Zubeda, 333 F.3d at 477 (citing Mansour v. INS, 230 F.3d 902, 908 (7th Cir. 2000)) (internal quotation marks omitted). In fact there is no advantage in writing a long opinion when a short one will do as the parties do not want law review articles, they want intelligible opinions explaining the basis for the court's determination. Such opinions may or may not require lengthy discussions.

The opinion that we considered in Sevoian is an example of an adequate but concise BIA opinion. There we denied a petition for review of a decision and order of the BIA even though the decision did not address explicitly each type of evidence the petitioner presented. 290 F.3d at 178. We explained that the "Board's opinion recognized and addressed [the petitioner's] key contention under the Convention Against Torture--that if removed, [the petitioner] would end up in the Georgian criminal justice system, and that suspects and

8

criminals in Georgia are tortured."  Id.

In this case, the BIA adequately explained its reasoning in its decision and order to allow for our meaningful review.  Unlike the BIA in Awolesi, in this case the BIA offered more than an "opaque explanation" explaining its decision to reverse, and its two-page decision provides much more insight than the four-sentence order at issue in Awolesi.  Here the BIA considered Toussaint's claim that it is more likely than not that she will be persecuted "on account of her father's [political] position[.]"  J.A. at 7.  In rejecting this claim, the BIA explained: "The reason for her father's arrest and mistreatment is unclear.  We further note that he was released from prison, and apparently lived for approximately 2 more years there without incident."  Id.

The BIA also acknowledged Toussaint's testimony that "she was approached in Miami, Florida, by unknown individuals who . . . warned her that she would be in danger if she returns to Haiti."  Id. Notwithstanding its awareness of that testimony, the BIA explained that it could not "identify any background or compelling testimonial evidence that convinces us that it [is] more likely than not that [Toussaint] will be persecuted in her country."  J.A. at 7.  Moreover, a general statement, or even a finding, that a person would be in danger in a particular place does not mean she is likely to be persecuted there for purposes of the INA inasmuch as ordinary criminal activity may put a person in danger and some places are more dangerous than others.  Overall, it is clear from the BIA's decision that, although it did not find Toussaint's testimony incredible, it found that her testimony was insufficient to meet her burden of proof.  Indeed, the BIA's reference to "insufficient evidence" indicates that it weighed the evidence and found it lacking, and thus made a factual finding rejecting Toussaint's claim.  See Sevoian, 290 F.3d at 175.  We are satisfied that the record both with respect to the evidence presented and lack of evidence supports the BIA's decision, and thus we cannot conclude that a reasonable fact-finder would be compelled to find to the contrary.  See id.

We also find that the BIA properly relied on J-E- in denying Toussaint protection under the CAT.  In J-E-, the BIA acknowledged that acts inflicted against accused criminals can constitute torture.  23 I. & N. Dec. at 302-04.  It found that "there are isolated instances of mistreatment in Haitian prisons that rise to the level of torture," id. at 302, but that the alien in that case had failed to produce sufficient evidence to show that he would more likely than not be subjected to such mistreatment.  Id. at 304.  The BIA stated, for example, that the alien had failed to show that the torture was "pervasive and

9

widespread." Id. at 303. Ultimately, the BIA found that, although the practice of detaining deportees for an indeterminate period "is unacceptable and must be discontinued, there is no evidence that Haitian authorities are detaining criminal deportees with the specific intent to inflict severe physical or mental pain and suffering." Id. at 300.[6] Therefore, the BIA in this case properly relied on J-E- to support its finding "that neither indefinite detention nor inhuman prison conditions in Haiti constitutes torture." J.A. at 7.

While we acknowledge that J-E- did not specifically mention the fact that the release of a detainee from a Haitian prison often depends on the payment of bribes by the detainee's family members to Haitian authorities, the BIA was not required to address expressly evidence concerning bribery in relying on J-E-. In J-E-, the BIA considered extensive evidence concerning various conditions and practices in Haitian prisons. Although the BIA found such conditions to be inhuman and deplorable, it denied relief because it concluded that the evidence nonetheless failed to satisfy the specific intent element of the definition of torture. 23 I. & N. Dec. at 300. Thus, though we do not applaud the practice of bribery that apparently is prevalent in Haitian prisons, a demonstration of its existence is not adequate to satisfy the specific intent element of the definition of torture. Rather, it is a general practice not directed at "a particular petitioner," here Toussaint. See Francois v. Gonzales, 448 F.3d 645, 652 (3d Cir. 2006) (citing Auguste v. Ridge, 395 F.3d 123, 137 (3d Cir. 2005)). To the contrary, bribery seems to be part of "the general state of affairs that constitute[s] conditions of confinement" in Haiti. Auguste, 395 F.3d at 137. Accordingly even if Toussaint has made a showing of its existence, she has not "allege[d] any kind of coercion, force, cruelty or brutality [that] would be personally directed at [her] if [she] were returned to Haiti." Francois, 448 F.3d at 652. Therefore, the BIA properly analogized Toussaint's claims regarding indefinite detention and bribery to those it rejected in its previous holding in J-E-.

Furthermore our opinion in Auguste, 395 F.3d 123, forecloses Toussaint's allegation that evidence of bribery renders her case distinguishable from other cases in which the BIA denied relief. In Auguste, we affirmed the denial of a habeas petition in which the

---

[6]We do not believe that it is the function of the BIA to tell other countries that they must "discontinue" internal practices. Rather, if the BIA objects to another country's practices, it should concern itself with what the consequence of those practices will be in removal proceedings appealed to it.

10

petitioner challenged the IJ's reliance on J-E-, emphasizing, inter alia, "that release [from Haitian prisons] often depends on the family members of the deportees petitioning the Haitian Ministry of Interior for release and their ability to pay anywhere between $ 1,000 to $ 20,000." Id. at 129. Like Toussaint, the petitioner in Auguste did not have family members in Haiti. We nonetheless rejected the petitioner's claims based, in part, on the BIA's holding in J-E- that "there is no evidence that Haitian authorities are detaining criminal deportees with the specific intent to inflict severe physical or mental pain or suffering." Id. at 152 (citation omitted).

Finally, we recognize that the evidence in this case included country reports and various articles concerning the mistreatment of criminal deportees in Haiti and the inhuman conditions in Haiti prisons which the BIA failed to mention specifically in its decision. However, we said in Zubeda that "[t]he BIA stated that it had considered 'background evidence[,]' and we assume that this is a reference to the country reports that were introduced before the [IJ.]"[7] 333 F.3d at 477. Similarly, our review of the record satisfies us that the BIA considered the country reports and the articles as background evidence in this case. Therefore, the BIA did not err in failing to mention specifically the country reports and the documentary evidence regarding prison conditions in Haiti. We reiterate that its reference to "background evidence" suffices to demonstrate its acknowledgment and consideration of the documentary evidence.

C. Separate Analyses of CAT and INA Claims

Next Toussaint argues that the BIA failed to analyze separately her claims under the INA and the CAT. Toussaint contends that "the CAT and the withholding of removal analysis focus on different elements and therefore must be treated independently." Petitioner's br. at 31.

We agree that the BIA must consider the claims separately. Thus, even though claims for withholding of removal under the INA and for protection under the CAT are likely to overlap, they seek "two separate forms of relief," and "each claim deserves individualized

---

[7]In Zubeda we nonetheless vacated the BIA's decision because the country reports proffered in that case "d[id] not address the prison conditions in the manner that the BIA suggest[ed] in its exceedingly brief reference to 'background evidence'"and instead pertained to "country wide, systematic incidents of gang rape, mutilation, and mass murder." 333 F.3d at 477.

consideration." Mansour, 230 F.3d at 907; see also Ramsameachire v. Ashcroft, 357 F.3d 169, 184-85 (2d Cir. 2004) ("[T]he BIA's decision with respect to an alien's claims for asylum and withholding of removal pursuant to the INA should never, in itself, be determinative of the alien's CAT claim."). In Zubeda, we concluded that the BIA erred, inter alia, in "allowing rulings on [the petitioner's] asylum and withholding of deportation claim to control her claim under the [CAT]." 333 F.3d at 479. Similarly, the Court of Appeals for the Seventh Circuit remanded Mansour to the BIA insofar as the BIA had denied protection under the CAT, but the court upheld the BIA's denial of petitioner's asylum and withholding of removal claims. The court explained that, although the BIA thoroughly addressed the petitioner's asylum and withholding of removal claims, it "in a minimalistic and non-detailed manner addressed [petitioner's CAT] claim." 230 F.3d at 908. The court reasoned that "[the petitioner's] two claims differ enough in nature that each warrants individualized treatment" inasmuch as his "ethnic/religious affiliation . . . was the primary basis for his [CAT] claim, [but he] did not center his asylum [or withholding] claim around his ethnic/religious background." Id. at 909.

Here, however, contrary to Toussaint's assertion, we are satisfied that the BIA separately analyzed Toussaint's claims under the INA and the CAT. First, the BIA determined that Toussaint was not entitled to withholding of removal under the INA. In doing so, the BIA considered Toussaint's testimony regarding the unidentified men in Miami who allegedly threatened her, the likelihood that her father's political views would be imputed to her, and "background" evidence.[8] Next, the BIA separately addressed Toussaint's "request under the Convention [Against Torture]." The BIA explained the relevance of its recent holding in J-E- and relied on J-E- in concluding that "there is insufficient evidence in the record to establish that it is more likely than not that [Toussaint] will be subjected to [isolated acts of torture] if she is detained upon her return to Haiti." J.A. at 7.

D. Social Group

Finally, Toussaint asserts that the BIA, in considering her claim under the INA, failed to consider that her status as a criminal

---

[8]As we have indicated, we are satisfied that the "background" evidence to which the BIA referred in its decision consisted of the documentary evidence proffered by Toussaint, such as the country reports.

deportee renders her a member of a social group on account of which she more than likely than not will be persecuted.[9] The government answers that Toussaint's "principal complaint that she is eligible for withholding of removal as a member of a social group of criminal deportees was not presented at her hearing and thus it is waived because of her failure to exhaust administrative remedies." Respondent's br. at 8. Toussaint disputes this contention.

Regardless of whether Toussaint waived this claim, we are impressed with the precedents of other courts of appeals establishing that, for purposes of the INA, criminal deportees are not recognized as a social group. See, e.g., Eilien v. Ashcroft, 364 F.3d 392, 397 (1st Cir. 2004); Bastanipour v. INS, 980 F.2d 1129, 1132 (7th Cir. 1992) ("Whatever its precise scope, the term 'particular social groups' surely was not intended for the protection of members of the criminal class in this country . . . ."). We will follow those precedents as we hardly can conceive that Congress would select criminals as a group warranting special protection in removal cases. In this regard we point out that Congress sometimes selects criminals for negative treatment under the INA on account of their records. See 8 U.S.C. §§ 1227(a)(2), 1231(b)(3)(B). We reject the notion that Congress would take the opposite approach in this context.

For the foregoing reasons, we will deny the petition for review.

———————

[9]Unlike the CAT, the INA requires the applicant to establish that deportation would threaten his or her life or freedom on account of race, religion, nationality, membership in a particular social group, or political opinion. INA § 241(b)(3)(A), 8 U.S.C. 1231(b)(3)(A).