**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-4317
_____

ANWAR JAVED,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES;
SECRETARY DEPARTMENT OF HOMELAND SECURITY,

Respondents

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A094-813-777)
Immigration Judge:  Honorable Miriam K. Mills
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 23, 2010

Before:  SCIRICA, <u>Chief Judge</u>, CHAGARES, <u>Circuit Judge</u>,
and RODRIGUEZ,<sup>*</sup> <u>District Judge</u>

(Opinion filed:  April 19, 2010)

_____

---

<sup>*</sup>The Honorable Joseph H. Rodriguez, Senior United States District Judge for the District of New Jersey, sitting by designation.

OPINION
_____

CHAGARES, Circuit Judge.

Anwar Javed petitions this Court for review of a final order of removal issued by the Board of Immigration Appeals ("BIA"). Substantial evidence supports the BIA's conclusion that Javed failed to corroborate his allegations of religious persecution, and therefore failed to meet the burden of proof required for his asylum and withholding of removal claims. Accordingly, we will deny Javed's petition.

I.

Because we write solely for the parties, we will briefly recite only the essential facts. Javed is a Pakistani Christian whose claims are based on fear of religious persecution. He is married and the father of five[1] children; his family remains in Pakistan. Javed alleges the following: in 1991, he was visiting with two childhood friends who were members of Sipah-e-Sahaba, a Muslim group that has since been designated a terrorist organization and banned by the Pakistani government. The friends told Javed that they would make him Muslim by having him recite the Qalna (a recitation that "There is no god but Allah, and Mohammad is the prophet of Allah."). Appendix ("App.") 52. He recited the Qalna to demonstrate to his friends that doing so did not convert him to Isalm. In 1993, during a similar conversation about religion, the friends

_____

[1]There is conflicting information in the record as to whether Javed has five or six children, however, this fact is not material for purposes of this appeal.

2

asked him to chant the Qalna again. Javed did so, thinking that they would not interpret his joking recitation to be a claim of religious faith.

Up until 2005, Javed lived as a Christian without incident. His work kept him out of his hometown, Firdauspura, during the week, but he regularly attended Catholic Mass on Sundays. In 2005, Javed began living full-time in Firdauspura. During the first Ramadan after Javed returned to the town, Javed's Muslim friends began pressuring him to join in Muslim prayers, fast for the holiday, and make his family obey Islamic rules. They told him that reciting the Qalna had made him Muslim, and that it was wrong for him to continue to live as a Christian.

In January 2006, Javed's friend, Mohammed Sadeq, accompanied by several men from the local mosque who wore the dress of Sipah-a-Sahaba and carried riot sticks, came to Javed's home. Sadeq told Javed that they expected him to begin taking lessons on being a Muslim and stated, "If you don't come to the Mosque, you will face the consequences. We will beat you until you die." App. 54. Javed slammed the door and immediately left town. The men returned several hours later. Javed's son told them that Javed had left town.

The group from the mosque continued to visit Javed's family's home to inquire as to Javed's whereabouts. About a week after Javed left town, one of Javed's children told him that someone posted a written threat on the front door of the family home: "This is your last warning. You are a Muslim and you are living as a Christian. If you don't come to the Mosque, you will meet your end." App. 54. A few weeks later, Javed left

3

Pakistan with an approved visa for the United States. He arrived in the United States on February 10, 2006 and was authorized to remain until August 9, 2006. He filed an application for asylum on September 12, 2006. On November 7, 2006 the Government served Javed with a Notice to Appear, charging him with removal under Section 237(a)(1)(B) of the Immigration and Nationality Act for remaining in the United States past August 9, 2006 without authorization. In response, Javed filed an application for withholding of removal.[2] In late November 2006, after Javed had filed for relief, another threatening note was posted to the front door of his family's home.

In support of his application, Javed produced two letters from his oldest son, Sami, two letters from his priest, and the written threat from November 2006. However, neither the priest's nor Sami's letters mentioned the January 2006 incident or the threats on Javed's life.

After a hearing, the Immigration Judge ("IJ") denied all relief. First, the IJ determined that Javed was not credible. The IJ based the adverse credibility finding on (1) Javed's failure to distinguish between the first written threat (which was not submitted into the record) and the November 2006 written threat, (2) the implausibility of Javed not confiding in his priest about the danger his recitation of the Qalna had caused, and (3) the supporting letters' failure to mention the threats against Javed. Second, the IJ held that

---

[2] Javed also requested relief under the Convention Against Torture ("CAT"). Javed no longer contests the IJ's decision to deny relief under the CAT, so that issue is not before us.

even if Javed was credible, he failed to produce sufficient evidence to corroborate his claim.

Javed appealed to the BIA. The BIA reversed the IJ's credibility determination, but dismissed Javed's appeal because the absence of corroborative evidence provided a sufficient basis for the IJ to reject Javed's claim. The BIA further held that Javed had not established that he faced persecution countrywide nor did he show a pattern or practice of persecution against Christians by the Pakistani government or government acquiescence in such persecution. Javed timely petitioned this Court for review.

## II.

We have jurisdiction to review final orders of the BIA pursuant to 8 U.S.C. § 1252. Sandie v. Att'y Gen., 562 F.3d 246, 250 (3d Cir. 2009). Where the BIA issues a decision on the merits as opposed to a summary affirmance, we review the BIA's decision. Chavarria v. Gonzalez, 446 F.3d 508, 515 (3d Cir. 2006). However, because the BIA's decision "affirmed and partially reiterated" the IJ's corroboration analysis, we review the IJ's determination along with the BIA's decision. See Sandie, 562 F.3d at 250.

Factual findings, including findings related to persecution and fear of persecution, are subject to the substantial evidence standard. Id. "Under this deferential standard, 'findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" Id. (quoting 8 U.S.C. § 1252(b)(4)(B)). We review legal conclusions de novo. Toussaint v. Att'y Gen., 455 F.3d 409, 413 (3d Cir. 2006). The IJ's corroboration determination is entitled to deference from this Court: "No court shall

5

reverse a determination made by a trier of fact with respect to the availability of corroborating evidence . . . unless the court finds, pursuant to with [sic.] subsection (b)(4)(B) of this section, that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable." 8 U.S.C. § 1252(b)(4)(D).

III.

Under 8 U.S.C. § 1158(b)(1)(A), the Secretary of Homeland Security or the Attorney General may grant asylum to a person who qualifies as a refugee. The burden of proof is on the applicant to establish his or her refugee status. 8 U.S.C. § 1158(b)(1)(B)(I). A refugee is defined as "any person who is . . . unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). To show a well-founded fear, an applicant must demonstrate that there is a "reasonable possibility" of suffering such persecution if he or she were to return to his or her country of nationality or last habitual residence. 8 C.F.R. § 1208.13(b)(2)(I). "An applicant does not have a well-founded fear of persecution if the applicant could avoid persecution by relocating to another part of the applicant's country of nationality . . . if under all the circumstances it would be reasonable to expect the applicant to do so." 8 C.F.R. § 1208.13(b)(2)(ii).

Credible testimony alone is not always sufficient to meet the burden of proof in an asylum claim. Sandie, 562 F.3d at 252. An applicant's testimony may sustain the burden

of proof without corroboration "only if the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to the specific facts sufficient to demonstrate that the applicant is a refugee." 8 U.S.C. § 1158(b)(1)(B)(ii). This Court has adopted a three-part test to determine whether an applicant is required to provide corroborating evidence: "(1) an identification of the facts for which it is reasonable to expect corroboration; (2) an inquiry as to whether the applicant has provided information corroborating the relevant facts; and, if he or she has not; (3) an analysis of whether the applicant has adequately explained his or her failure to do so." Abdulai v. Ashcroft, 239 F.3d 542, 554 (3d Cir. 2001) (internal quotations omitted) (adopting BIA's test in In re S-M-J-, 21 I&N Dec. 722 (BIA 1997)). "Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence." 8 U.S.C. § 1158(b)(1)(B)(ii). The IJ must give the applicant notice of the corroboration expected and an opportunity to provide an explanation if the applicant is unable to produce the corroboration. Chukwu v. Att'y Gen., 484 F.3d 185, 192 (3d Cir. 2007).

Javed argues that he provided sufficient corroboration to support his testimony and that the BIA erred by not conducting an independent corroboration analysis. Javed relies on Miah v. Ashcroft, 346 F.3d 434 (3d Cir. 2003). In Miah, the BIA reversed the IJ's adverse credibility finding but agreed with the IJ that Miah failed to meet his burden of

7

proof due to his lack of corroborating evidence. Id. at 436. In its corroboration analysis, the BIA merely reiterated the IJ's findings with respect to Miah's corroboration instead of providing its own rationale for its corroboration determination. Id. at 440. We held that the BIA erred by adopting the IJ's findings, because the IJ's corroboration analysis was influenced by its adverse credibility determination. Id. Since the BIA found Miah to be credible, it should have conducted an independent corroboration analysis or remanded the case so that the IJ could reach a conclusion given that Miah was now considered to be credible. Id. Javed argues that, like in Miah, the BIA reversed the IJ's credibility determination but then relied on the IJ's reasoning in concluding that Javed failed to meet his burden of proof rather than conducting an independent analysis or remanding the matter.

Javed's argument fails to persuade us. The IJ's determination that Javed did not meet his burden of proof with corroborating evidence did not depend on her adverse credibility finding. Instead, the IJ found that "even assuming arguendo that he was credible, the Court would expect reasonable corroboration of respondent's claim in light of the weakness of his testimony." App. 19. This Court has held that Miah does not apply when the IJ's corroboration analysis is "separate and independent" from the IJ's adverse credibility finding. Sandie, 562 F.3d at 251 (declining to apply Miah when, "On one hand, the IJ held that even if Sandie's testimony were deemed credible, Sandie would have to corroborate his story and he failed to do so. On the other hand, the IJ explained, Sandie's testimony was not credible."). Thus, Miah does not control here, and the BIA

8

did not err by adopting the IJ's findings with respect to Javed's absence of corroborative evidence.

Javed was required to provide reliable corroborating evidence if it was reasonable to expect such proof and there was no satisfactory explanation for its absence. See Toure v. Att'y Gen., 443 F.3d 310, 323 (3d Cir. 2006). The IJ based its conclusion that Javed failed to meet this burden on two findings. First, the letters from Javed's son and his priest did not mention any threats to Javed's life. Second, Javed failed to produce corroborative evidence from any of his teenage children who, according to Javed, witnessed the January 2006 incident where men with sticks threatened Javed at his home. Based on our review of the record and of the IJ's decision, we conclude that the IJ was reasonable in requiring corroboration. The January 2006 incident and the threats on his life were central to Javed's petition and were apparently witnessed by others. Despite being able to produce four letters of support, none of the letters corroborate these events. "It is reasonable to expect corroboration for testimony that is central to an applicant's claim and easily subject to verification." Sandie, 562 F.3d at 252. Further, as noted below, Javed failed to present a satisfactory explanation for his failure to corroborate these allegations.

The IJ's corroboration analysis meets the Abdulai standard. The IJ clearly identified Javed's testimony regarding the January 2006 incident and subsequent threats on his life as requiring corroboration. During the hearing, the IJ put Javed on notice that he had not produced sufficient corroborating evidence for these allegations. The IJ gave

9

Javed an opportunity to explain why the letters he submitted from his son do not mention these threats. Javed responded "Maybe they did not write anything about that, they will be, just bothered by them later on." App. 75. The IJ asked Javed why the letters from his priest do not reference any threats against Javed, and Javed responded that he did not disclose the threats to his priest because Javed was "very busy" with work. App. 82. Javed went on to state that his son had told the priest about the threats, but Javed did not explain why the priest failed to include that information in his letters. Thus, the IJ provided Javed with notice of the corroboration expected and an opportunity to explain why he had not presented the corroboration. Substantial evidence supports the IJ's conclusion that Javed's explanation did not adequately demonstrate that such evidence was unavailable. We conclude that the BIA did not err in its review of the IJ's corroboration determination.[3]

Because Javed has not met the lower burden of proof for asylum, he is also unable to meet the more stringent showing required to qualify for withholding of removal. See Adbulrahman v. Ashcroft, 330 F.3d 587, 592 n.2 (3d Cir. 2003). Accordingly, we will deny Javed's petition.

---

[3]Since substantial evidence supports the determination that Javed failed to provide corroborating evidence sufficient to meet his burden of proof, we need not address whether Javed has shown that he would face persecution country-wide.