**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2639
_____

TATYANA SOLDATENKO,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A96 253 609)
Immigration Judge:  Honorable R .K. Malloy

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 7, 2010

Before: MCKEE, Chief Judge, HARDIMAN and COWEN,  Circuit Judges

(Opinion filed: July 12, 2010)
_____

OPINION
_____

PER CURIAM

    Tatyana Soldatenko petitions for review of a Board of Immigration Appeals

("BIA") decision dismissing her appeal of an Immigration Judge's ("IJ") decision

denying her applications for relief from removal.  We will deny the petition for review.

Soldatenko is a native of the Soviet Union and citizen of the Ukraine who came to the United States in 2002. In 2003, a notice to appear was issued charging that Soldatenko was subject to removal because she was present in the United States without having been admitted or paroled. Through counsel, Soldatenko conceded that she is removable as charged. The IJ considered Soldatenko's applications for withholding of removal and relief under the Convention Against Torture ("CAT"). The IJ found Soldatenko's asylum application time-barred.

Soldatenko testified that she is a Baptist, that she went to a prayer house every Sunday as a child, and that she was baptized in 1987 at the age of 23. Soldatenko stated that, after the baptismal ceremony, eight to ten men dressed in black with the Ukrainian National Defense symbol "UNO" on their sleeves emerged from two cars. According to Soldatenko, the men screamed and cursed and beat up the people present at the ceremony. She stated that she was hit with a stick, lost consciousness, and woke up in the hospital, where she remained for one week. Soldatenko was an outpatient at the hospital for the next three months. Soldatenko's pastor reported the attack to the police but no action was taken. After her baptism, Soldatenko became more active in the church and distributed literature. Soldatenko stated that, when she returned to work, four co-workers beat her, cursed at her, and made derogatory comments about her faith. Soldatenko told a supervisor, who did not take any action.

Soldatenko further testified that she was attacked five times from 1992 to 2000 by

men dressed in the black nationalist uniform. The first incident occurred in 1992 at the entrance to Soldatenko's apartment. The men attacked her, cursed at her, and mentioned her faith. Soldatenko suffered bruises and scratches. Soldatenko testified that the next attack occurred in 1996 while she was distributing religious literature in the countryside. She suffered bruises on her body and a bloody lip. Soldatenko was treated at a hospital, where she stayed for two hours. The third attack occurred in 1998. After attending the opening ceremony of a new church, four nationalists approached her and her son. The men struck her on the knee with a knife and threatened to kill her if they saw her again. The men also kicked her son. Soldatenko stated that she was hospitalized for pains in her chest and that she has a scar on her knee. She was released after several hours and returned to the hospital as an outpatient for about one week.

Soldatenko testified to a fourth attack in 2000, which occurred on the way home from work. Three nationalists got out of a car, attacked her faith, and tried to pull her into the car to rape her. Soldatenko fell, injuring her lower back and spine. An ambulance took her to the hospital, where she remained for several hours. She returned to the hospital as an outpatient for about three weeks. Finally, Soldatenko testified that in 2001 a man came to her house and posed as a mailman. When Soldatenko opened the door, the man made a remark about her religion and hit her. Soldatenko was taken to the hospital, released after three hours, and returned as an outpatient for about two weeks. After each of the incidents, Soldatenko filed a complaint with the police but no action was taken.

3

Soldatenko left the Ukraine in January 2002 after receiving a threatening letter. She stated that she fears returning to the Ukraine because she believes that nationalists will harm her. On cross-examination, Soldatenko stated that her husband, who she married in 1982, came to the United States in 1996 because he was persecuted on account of his Jewish religion. Soldatenko stated that her husband could corroborate her testimony, but he feared coming to court because he is subject to a final order of deportation. The Government also pointed out on cross-examination that Soldatenko testified that she reported all of the attacks to the police, but her affidavit reflected that she only reported one attack. In addition, the Government pointed out that Soldatenko had omitted the fact of her son's beating in her affidavit.

The IJ denied Soldatenko's applications for relief. The IJ noted that, while Soldatenko testified that the attack on the day of her baptism occurred after the baptismal ceremony, she stated in her written affidavit that the attack occurred before the ceremony took place. The IJ also stated that Soldatenko had submitted letters from her mother and friends, but she had submitted no objective evidence corroborating her testimony that she was a practicing Baptist in the Ukraine, that she was baptized, or that she was persecuted.

The IJ further stated that Soldatenko did not submit any evidence to support her claim that there are groups of men, dressed in black, attacking women and children on the streets on account of their Baptist religion. The IJ believed that this type of behavior would be documented in country reports if it occurred. The IJ also noted that Soldatenko

4

did not authenticate several documents purporting to be medical notes reflecting treatment for injuries she sustained in the attacks. The IJ stated that Soldatenko's failure to present objective, credible evidence was significant because her testimony was in direct contrast to all of the country reports, which reflected religious discrimination in the Ukraine, but no persecution against Baptists or an unwillingness to protect Baptists. The IJ noted that the 2008 Department of State Profile of Asylum Claims and Country Conditions reflects rapid growth in Baptist churches and membership. The IJ concluded that Soldatenko failed to establish that she was persecuted on account of her Baptist religion, that there was a clear probability that she would be persecuted, or that anyone would be interested in torturing her upon return to Ukraine.

The BIA dismissed Soldatenko's appeal. The BIA agreed that Soldatenko's asylum application was untimely and that she did not meet her burdens of proof for asylum, withholding of removal, and CAT protection. The BIA stated that the IJ provided an adequate basis for her finding that Soldatenko failed to present credible evidence in support of her account, noting the inconsistent evidence as to when the attack occurred on the day of her baptism and whether she filed police reports after the attacks, and the omission of her son's beating from her affidavit. The BIA stated that Soldatenko did not show that the harm she alleged actually occurred.

The BIA further stated that, in light of the credibility problems, the IJ appropriately required corroborating evidence. The BIA recognized that Soldatenko provided some

5

corroborating evidence, but noted that she did not provide her husband's testimony and stated that his fear of appearing in court due to his removal order was not a reasonable explanation for the absence of his testimony. The BIA also rejected Soldatenko's argument that the IJ failed to consider the documentary evidence, noting that the IJ had thoroughly analyzed the country conditions and found no objective evidence supporting Soldatenko's claim that Baptists are persecuted in the Ukraine. This petition for review followed.

We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1). We review the BIA's factual determinations under the substantial evidence standard. Toussaint v. Att'y Gen., 455 F.3d 409, 413 (3d Cir. 2006). Under this standard, we will affirm the BIA's findings unless "any reasonable adjudicator would be compelled to conclude to the contrary." Id. (quoting 8 U.S.C. § 1252(b)(4)(B)).[1]

Soldatenko argues that the BIA's decision is not supported by substantial evidence. First, Soldatenko contends that her written statement about the attack on the day of her baptism does not conflict with her testimony. In her written statement, Soldatenko noted, "When the preparation was almost finished and we were supposed to perform the chief rite in the water, a group of nationalists emerged. They attacked us . . . ." A.R. at 340.

---

[1] The Government has moved to dismiss the portion of Soldatenko's petition for review that seeks review of her asylum application, asserting that we lack jurisdiction to review the BIA's determination that her application was untimely filed. Soldatenko, however, does not challenge in her brief the ruling that her application is time-barred. The Government's motion to dismiss is thus denied.

Soldatenko, however, testified that she completed the baptismal ceremony, which involved entering the water, being "dumped" in the water, and then exiting the water. A.R. at 170. She stated that she exited the water and then noticed two cars from which nationalists ran out and started to beat everyone present. We find no error in the BIA's reliance on the differences in these statements to support an adverse credibility finding.

Soldatenko further argues that the BIA erred in relying on the omissions from her written statement of the facts that she reported all of the attacks to the police and that her son was attacked. She asserts that the purpose of testimony is to add the details of a claim. Soldatenko's written statement, however, is detailed and provides that she went to the police after the 1992 attack. Soldatenko's written statement also provides that, during the 1998 attack, her son screamed and she started to ask the attackers not to touch him. In light of the details provided by Soldatenko in her written statement, we find no error in the BIA's reliance on the omissions of related facts to which she testified in assessing her credibility.

Soldatenko also challenges the BIA's conclusion that the country reports do not support the conclusion that Baptists are persecuted in the Ukraine. Soldatenko correctly notes that a 2008 Ukraine Asylum Country Profile reflects that "Evangelical Christian missionaries reported some instances of societal discrimination against members of their

churches[.]" A.R. at 251.[2] The Profile, however, further states that there is no indication of widespread or systematic physical violence by nationalist or other groups. In addition, as recognized by the IJ, the Profile states that after 1991 Evangelicals were no longer denied religious freedom and Baptists experienced rapid growth in churches and membership. Soldatenko also contends that the 2005 Country Report on Human Rights Practices in Ukraine corroborates attacks on Evangelicals by a nationalist group named "Dialogue." The Country Report, however, states only that "Evangelical Protestant leaders complained about the activities of the group 'Dialogue,' which they and human rights groups characterized as a front group for the [Ukrainian Orthodox Church, Moscow Patriarchy] that promotes hostility toward non-Orthodox Christians." A.R. at 288. Finally, Soldatenko contends that a 2004 article reflects that a Christian publisher was attacked, like her, while answering the door. The article also reflects that, unlike Soldatenko, the publisher was a church leader who had been outspoken in his support for democratic change. Soldatenko has not shown that the record compels the conclusion that Baptists are persecuted in the Ukraine.

We conclude that substantial evidence supports the BIA's conclusion that Soldatenko did not meet her burden of proof. Accordingly, we will deny the petition for

---

[2]Soldatenko states that the Country Profile is dated 1998 but the record reflects that the Profile was issued in 2008.

review.[3]

---

[3]Soldatenko does not appear to challenge the rejection of her CAT claim in her brief. She has thus waived that claim. <u>Chen v. Ashcroft</u>, 381 F.3d 221, 235 (3d Cir. 2004).

9