**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-3343
_____

LUIS HIPOLITO-DE LA ROSA,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of a Decision of the Board
of Immigration Appeals
(A215-927-897)
Immigration Judge: Judge Patrick J. Ehlers
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 13, 2025

Before: SHWARTZ, MATEY, and MONTGOMERY-REEVES, *Circuit Judges*.

(Opinion filed: December 15, 2025)
_____

OPINION*
_____

MONTGOMERY-REEVES, *Circuit Judge*.

Luis Hipolito-De La Rosa ("Hipolito") seeks review of the Board of Immigration

Appeals' (the "BIA") final order of removal. Hipolito argues the BIA erred in finding

that the Immigration Judge (the "IJ") did not violate Hipolito's due process rights and

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

erred in denying his application for cancellation of removal and voluntary departure. For the reasons explained below, we will deny the petition.

## I. BACKGROUND

Hipolito unlawfully entered the United States in 2008 and has been continuously present in the United States since his arrival. On June 5, 2019, the Department of Homeland Security commenced removal proceedings against Hipolito. Hipolito concedes his removability based on his unlawful entry into the United States. But Hipolito claimed that he was of good moral character and his two daughters would face an undue hardship if he were removed to Mexico.

While Hipolito lived in the United States, he married Elizabeth Rebollo, and they had two daughters. Though Hipolito and Rebollo eventually divorced, Hipolito remained an active presence in his daughters' lives. While Rebollo had primary physical custody of the two children, Hipolito provided her with child support, dropped off and picked up the children from school, and took care of the children when Rebollo was sick.

On January 6, 2019, Hipolito and Rebollo got into an argument at Hipolito's Pennsylvania residence and in front of Rebollo's mother and the children (the "January Incident"). After the argument ended, Hipolito left. Rebollo called the police and told them that Hipolito pulled out a handgun during the argument. Rebollo subsequently left the residence and Hipolito returned, the police arrived and informed him of Rebollo's allegations. Hipolito consented to a search of his person and the home, but the police did not find a handgun. Nonetheless, Hipolito was charged with numerous state-law crimes relating to the January Incident, including unlawful possession of a firearm. Hipolito

2

pleaded guilty to one charge of terroristic threats and was transferred to Immigration and Customs Enforcement's custody after serving his sentence.

In his removal proceedings before the IJ, Hipolito filed an application for the cancellation of removal and in the alternative for voluntary departure. During Hipolito's hearing, the IJ informed the parties that he intended to call Rebollo and have her telephonically testify about the January Incident. The IJ asked for objections and Hipolito's lawyer responded, "We'd be open to that." Certified Administrative Record, 216. When called, Rebollo twice testified that Hipolito brandished a firearm during the January Incident. After the IJ finished his questioning, he asked both parties if they wanted to cross-examine the witness, and they declined. Then, the IJ asked Hipolito for a response to Rebollo's testimony. Hipolito responded, "I don't have, I didn't have a gun. The cops came. They did their job. I never had a gun. Maybe she was confused. I don't know." *Id.* at 229. Hipolito then rested his case.

The IJ denied the application for cancellation of removal and request for voluntary departure. The IJ found that Hipolito failed to establish that his children would suffer an exceptional and extremely unusual hardship upon Hipolito's separation, which is necessary for cancellation of removal. The IJ also found that Rebollo was credible; that Hipolito "[wa]s not credible" about brandishing a firearm; and that he "was untruthful with the Court." Appendix 17. Thus, the IJ concluded that Hipolito lacked good moral character to justify a voluntary departure.

Hipolito appealed the IJ's findings to the BIA and argued that the IJ violated his due process rights. The BIA then issued its written opinion, concluding that Hipolito's due

3

process rights were not violated and affirming the IJ's findings on cancellation of removal and voluntary departure. Hipolito timely petitioned for review.

## II. DISCUSSION[1]

Hipolito challenges the BIA's final order of removal on three grounds: alleged due process violations, the hardship requirement for cancellation of removal, and the character determinations for his voluntary departure request. We address each in turn.

We have jurisdiction under 8 U.S.C. § 1252 to review the BIA's decision. "Ordinarily, Courts of Appeals review decisions of the [BIA], and not those of an IJ." *Camara v. Att'y Gen.*, 580 F.3d 196, 201 (3d Cir. 2009) (quoting *Gao v. Ashcroft*, 299 F.3d 266, 271 (3d Cir. 2002), *as amended* (Aug. 30, 2002), *superseded on other grounds by* 8 U.S.C. § 1158(b)(1)(B)(iii)). We review the IJ's decision "to the extent the BIA substantially relied on that opinion." *B.C. v. Att'y Gen.*, 12 F.4th 306, 313 (3d Cir. 2021) (quoting *Camara*, 580 F.3d at 201) (quotation marks omitted). We review both the BIA's and the IJ's decisions if "the BIA 'affirmed and partially reiterated' the IJ's determinations." *Blanco v. Att'y Gen.*, 967 F.3d 304, 310 (3d Cir. 2020) (quoting *Sandie v. Att'y Gen.*, 562 F.3d 246, 250 (3d Cir. 2009)). We review legal questions de novo and factual findings for substantial evidence, deferring to them "unless any reasonable adjudicator would be compelled to conclude to the contrary." *Toussaint v. Att'y Gen.*, 455 F.3d 409, 413 (3d Cir. 2006), *as amended* (Sept. 29, 2006) (quoting 8 U.S.C. § 1252(b)(4)(B) (quotation marks omitted)). And "[w]e review the BIA's waiver

---

[1] The BIA had jurisdiction to hear Hipolito's appeal under 8 C.F.R. § 1003.1(b)(3). We have jurisdiction to review final orders of removal under 8 U.S.C. § 1252(a).

determinations for an abuse of discretion." *Sanchez v. Att'y Gen.*, 147 F.4th 348, 352 (3d Cir. 2025).

### A. Due Process

"The Fifth Amendment . . . guarantees aliens who are seeking to forestall or terminate removal proceedings an 'opportunity to be heard at a meaningful time and in a meaningful manner.'" *Serrano-Alberto v. Att'y Gen.*, 859 F.3d 208, 213 (3d Cir. 2017) (quoting *Dia v. Ashcroft*, 353 F.3d 228, 239 (3d Cir. 2003) (en banc)). Due process requires "(1) factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) the opportunity to make arguments on his or her own behalf; and (3) an individualized determination of his [or her] interests." *Id.* (internal marks and citations omitted). Stated plainly, the Due Process Clause requires "a full and fair hearing that allows" the petitioner "a reasonable opportunity to present evidence on their behalf . . . and a decision on the merits of their claim by a neutral and impartial arbiter." *Id.* (citations omitted). But a "procedural due process violation" occurs if a petitioner is "not afforded the opportunity to argue on his own behalf" because "(1) . . . he was prevented from reasonably presenting his case[,] and (2) . . . substantial prejudice resulted." *Id.* (alteration in original) (quoting *Fadiga v. Att'y Gen.*, 488 F.3d 142, 155 (3d Cir. 2007)).

Hipolito primarily argues that the IJ violated his due process rights when it *sua sponte* called Rebollo as a witness and credited her testimony. But the IJ gave Hipolito the opportunity to object to Rebollo's appearance as a witness; Hipolito declined to do so. And the IJ gave Hipolito a chance to cross-examine Rebollo; again, Hipolito chose not to.

5

Finally, after Rebollo finished testifying, the IJ gave Hipolito an opportunity to explain that he did not have a firearm during the dispute. So the IJ gave Hipolito procedural due process because Hipolito had an opportunity to present his case with respect to Rebollo's testimony, which was all that was required.

Hipolito also argues that the IJ violated his due process rights by improperly ignoring evidence that Hipolito did not have a handgun, and then searching for and crediting its own evidence that Hipolito pulled a handgun out during his argument with Rebollo. We have found due process violations when, "after determining that the government's attorney was not prepared[,]" the IJ "took over the [government's] cross-examination" by "ask[ing] [the petitioner] a total of 87 questions." *Abulashvili v. Att'y Gen.*, 663 F.3d 197, 201, 207 (3d Cir. 2011). Or when the IJ "continually abused an increasingly distraught petitioner, . . . wholesale nitpick[ed] . . . [the petitioner's] testimony with an eye towards finding inconsistencies and contradictions," and denied the petitioner the opportunity to present testimony from critical witnesses who were only available on dates after the hearing. *Cham v. Att'y Gen.*, 445 F.3d 683, 691–93 (3d Cir. 2006).

Here, the IJ's behavior did not rise to the level of a due process violation. Instead, the record reflects that Hipolito had a full opportunity to present his case; the IJ did not interrupt him; and the IJ was familiar with record. When the IJ questioned Rebollo, it did so with Hipolito's consent. And the record does not support that the IJ ignored contrary evidence. The IJ's decision to credit Rebollo's testimony over Hipolito's testimony is not

6

evidence of a due process violation.[2]  Thus, we cannot conclude that the IJ's examination of the evidence resulted in a due process violation.[3]

### B.    Application for Cancellation of Removal

Cancellation of removal requires a showing that Hipolito's "removal would result in exceptional and extremely unusual hardship to [his] . . . child[ren], who [are] . . . citizen[s] of the United States."[4]  8 U.S.C. § 1229b(b)(1).  The statute "permits relief only where the hardship goes beyond that which is inherent in forced deportation." *Wilkinson v. Att'y Gen.*, 131 F.4th 131 F.4th 134, 143 (3d Cir. 2025).  It does not here.

Hipolito argues that the BIA erred in holding that he did not meet the requisite hardship requirement for cancellation of removal.  We disagree.  We acknowledge that Hipolito has been a constant presence in his daughters' lives, picking them up from school, taking them to school, and providing timely child support to Rebollo.  We also acknowledge that Hipolito provides an emotional presence for his children that will be severed if he is forced to leave the country.  And we acknowledge that Rebollo has a

---

[2]  Hipolito argues that there is evidence in the record from Rebollo's mother that Hipolito did not have a handgun during the altercation.  That is unsupported by the record.  At best, Rebollo's mother did not provide testimony one way or the other about Hipolito having a firearm at the time of the January Incident.  And Hipolito chose not to call Rebollo's mother as a witness.

[3]  Even if there were a violation in the IJ's treatment of Hipolito at the hearing, his due process argument still fails because there is no prejudice.  As discussed herein, there is substantial evidence to affirm both the IJ's hardship and moral character determinations.

[4] The other elements are whether Hipolito (1) was continuously present in the United States for at least ten years, (2) is a person of good moral character, and (3) was not convicted of an offense that bars such discretionary relief.  8 U.S.C. § 1229b(b)(1).

severe illness for which she is receiving treatment. That said, there is substantial evidence to support the BIA's determination that Hipolito's children would not face an extremely unusual hardship. Rebollo is responsible for the daily care of the children and has a support system of a partner, mother, and sister. *See id.* at 143–45 (concluding that a child "struggling, feeling sad, and acting up, are exactly the responses we would expect when a beloved parent faces deportation . . . we cannot characterize [such responses] as extremely unusual," and that the deportation of a "breadwinner inevitably hurts a family financially" but such financial consequences are "not exceptional.") (internal quotation marks and footnote omitted). Under our deferential review, we conclude that substantial evidence supports the BIA's determination.

### C.    Request for Voluntary Departure

Voluntary departure requires a showing that Hipolito is a person of good moral character.[5] 8 U.S.C. § 1229c(b)(1). Good moral character involves "taking into account . . . the standards of the average citizen in the community of residence." 8 C.F.R. § 316.10(a)(2). "An applicant shall be found to lack good moral character" if he "[h]as given false testimony to obtain any benefit from the [Immigration Nationality] Act, if the testimony was made under oath or affirmation and with an intent to obtain an immigration benefit." 8 C.F.R. § 316.10(b)(2)(vi).

---

[5] The other elements are whether Hipolito (1) was physically present in the United States for at least one year; (2) was not removable for engaging in certain criminal activities; and (3) has the means to depart the United States and intends to do so. 8 U.S.C. § 1229c(b)(1).

Hipolito argues that the BIA erred in relying on Rebollo's testimony when determining that he lacks good moral character. The BIA, citing the IJ's findings, affirmed the IJ's determination that Hipolito gave false testimony when he stated that he did not have a handgun during the altercation with his wife.[6] Substantial evidence supports this finding, which was based on Rebollo's consistency in the police report and hearing. Because Hipolito's contrary testimony was given to receive an immigration benefit—cancellation of removal—there is substantial evidence that Hipolito lacks good moral character. We therefore affirm.[7]

## III. CONCLUSION

For these reasons, we will deny the petition for review.

---

[6] "We review adverse credibility determinations for substantial evidence" and "we must uphold the credibility determination of the BIA or IJ unless 'any reasonable adjudicator would be compelled to conclude to the contrary.'" *He Chun Chen v. Ashcroft*, 376 F.3d 215, 222 (3d Cir. 2004) (quoting 8 U.S.C. § 1252(b)(4)(B)).

[7] We acknowledge that 8 U.S.C. § 1229c(f) provides that "[n]o court shall have jurisdiction over an appeal from denial of a request for an order of voluntary departure under subsection (b)." That said the Immigration and Nationality Act also provides that "[n]othing . . . in any other provision of this chapter . . . shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court." 8 U.S.C. § 1252(a)(2)(D). "[T]he good moral character standard is an 'application of a legal standard to undisputed or established facts,' and thus, reviewable"; therefore, we review the IJ's good moral character determination for substantial evidence. *Sanchez*, 147 F.4th at 354 (quoting *Wilkinson v. Garland*, 601 U.S. 209, 221 (2024)).