NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-1548
_____

QIAO LIN WANG,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent


_____

On Petition for Review of an Order
of the Board of Immigration Appeals
Agency No. A200-039-864
Immigration Judge:  Eugene Pugliese
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 11, 2010

Before: AMBRO, CHAGARES, and GREENAWAY, JR., Circuit Judges.

(Opinion filed: August 23, 2010)
_____

OPINION
_____

CHAGARES, Circuit Judge.

       Qiao Lin Wang petitions this Court to review a final order of removal issued by the

Board of Immigration Appeals ("BIA").  An Immigration Judge ("IJ") denied her

application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). The BIA dismissed her appeal. For the reasons set forth below, we will grant the petition for review, vacate the BIA's order, and remand to the BIA for further proceedings.

I.

Because we write solely for the benefit of the parties, we recite only the essential facts. Wang, a native and citizen of the People's Republic of China, entered the United States in Brownsville, Texas, on July 26, 2005. The Immigration and Naturalization Service served her with a notice to appear charging her as inadmissable pursuant to section 212(a)(6)(A)(i) of the Immigration and Nationality Act, which provides that "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible." Wang conceded the charge and applied for asylum, withholding of removal, and protection under the CAT based on China's family planning policy. She moved for, and was granted, a change of venue to Immigration Court in New Jersey.

Wang testified as follows in support of her application at a February 9, 2007 hearing before the IJ. In 2004, she and her then-boyfriend (hereinafter referred to as her "husband")[1] had a traditional marriage ceremony in China, and the two began living together thereafter. Their marriage was not legally recognized because they were both

---

[1]Wang and her husband were subsequently married in the United States.

2

under the minimum marriage ages of twenty (for a woman) and twenty-two (for a man). Because Wang and her husband were not lawfully married, their cohabitation was illegal. After a neighbor reported their cohabitation to the authorities, family planning officials required Wang to submit to examinations to determine whether she was pregnant. A December 3, 2004 examination revealed that Wang was pregnant, and she was forced to undergo an abortion that same day. She was also fined, told that she was not permitted to have any children for two years, and ordered to return to the hospital to have an intrauterine device ("IUD") implanted one month after the abortion. To avoid the IUD insertion, Wang went to stay with her aunt in another village. Wang eventually fled China for the United States.

According to Wang's Form I-589, family planning officials searched for Wang after she fled. They spoke with her husband and threatened to sterilize him unless he informed them of Wang's whereabouts. Wang claimed that her husband then lost his job because family planning officials told his supervisor that he violated the family planning policy. Wang alleged that, as a result of these events, her husband joined her when she left China for the United States.

In support of her claim, Wang submitted a receipt, dated January 28, 2005, reflecting payment of a two-thousand yuan fine for being "pregnant without permission." Joint Appendix ("JA") 198. She also submitted letters from her father and aunt corroborating her testimony. In addition, the IJ entered into the record a copy of the 2005

3

State Department Country Report on Human Rights Practices for China, which notes that "to delay childbearing, the law sets the minimum marriage age for women at 20 years and for men at 22 years. It continued to be illegal in almost all provinces for a single woman to have a child." JA 115.

The IJ held that Wang failed to meet her burden of proof, primarily because she did not produce her husband as a corroborating witness. The IJ also held that Wang was required to corroborate her testimony that China did not permit unmarried people to cohabit. The BIA dismissed Wang's appeal because "she did not provide corroborative evidence from her husband, who is a key figure in her asylum claim and a witness to many of the alleged incidents of past harm." JA 3. The BIA further concluded that Wang's CAT claim failed because she had not alleged that she had been tortured. This petition for review followed.

## II.

We have jurisdiction to review the BIA's final order of removal under 8 U.S.C. § 1252. Our power of review extends to only the BIA's decision. Abdulai v. Ashcroft, 239 F.3d 542, 554 (3d Cir. 2001). However, when the BIA adopts the IJ's findings and discusses some of the bases for the IJ's opinion, we review both decisions. See Xie v. Ashcroft, 359 F.3d 239, 242 (3d Cir. 2004). We review legal conclusions de novo. Toussaint v. Att'y Gen., 455 F.3d 409, 413 (3d Cir. 2006). We review findings of fact to determine whether they are supported by substantial evidence; such findings are

conclusive "unless a reasonable adjudicator would be compelled to arrive at a contrary conclusion." Camara v. Att'y Gen., 580 F.3d 196, 201 (3d Cir. 2009) (citations omitted); see also 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."). Furthermore, "[n]o court shall reverse a determination made by a trier of fact with respect to the availability of corroborating evidence . . . unless the court finds . . . that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable." 8 U.S.C. § 1252(b)(4); see also Sandie v. Att'y Gen., 562 F.3d 246, 252 (3d Cir. 2009).

Asylum allows an alien who is otherwise subject to removal to stay in the United States because he or she qualifies as a refugee. Chukwu v. Att'y Gen., 484 F.3d 185, 188 (3d Cir. 2007). A refugee is a person who is unable or unwilling to return to his or her country of nationality because of persecution or a well founded fear of persecution on account of, inter alia, political opinion. 8 U.S.C. § 1101(a)(42)(A). "[A] person who has been forced to abort a pregnancy or to undergo involuntary sterilization, . . . or has been persecuted for . . . resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion" and a person with a well founded fear that he or she will be "forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion." Id. § 1101(a)(42)(B). To establish a well

founded fear of persecution, an applicant must show a subjective fear as well as an objectively reasonable possibility that he or she would suffer such persecution if returned to his or her country. 8 C.F.R. § 1208.13(b)(2)(i).

In addition to asylum, Wang sought withholding of removal and relief under the CAT. An applicant for withholding of removal must show that there is a "clear probability that he or she would face persecution if returned to his or her home country." Abdulrahman v. Ashcroft, 330 F.3d 587, 592 n.2 (3d Cir. 2003) (quotation marks omitted). To qualify for relief under the CAT, a petitioner must prove that he or she is more likely than not to be tortured in the country of removal. Id.

### III.

### A.

We first address Wang's argument that the BIA erred in concluding that she failed to meet her burden of proof due to insufficient corroboration. The administrative record contained, inter alia, the following evidence: 1) the receipt reflecting payment of a two-thousand yuan fine for being "pregnant without permission," 2) letters from Wang's father and aunt, corroborating the events to which she testified, and 3) the State Department Report establishing that Chinese law sets a minimum marriage age and that in China it is unlawful for a single woman to have a child.

The IJ denied Wang's asylum and withholding of removal claims mainly because her husband did not testify. With respect to Wang's husband, the IJ stated "the Court

feels today that that is an essential witness and that he needed to be here today to testify and to subject himself to cross-examination so that this case could be corroborated." JA 34. The IJ, in his decision, did not mention Wang's receipt for payment of the fine for being "pregnant without permission" and dismissed out of hand the corroborating letters from Wang's family members because "these letters are from people who are not here . . . . to be cross-examined in Court." JA 34-35.

The BIA began its analysis by observing that Wang did not provide corroborative evidence in the form of her husband's testimony. It noted that she submitted "a fine receipt indicating that she paid two thousand yuan for 'pregnant without permission' and letters from her father about her problems with the family planning committee." JA 3. Then, without further analysis, the BIA determined "[w]e cannot conclude that this evidence is sufficient to meet her burden of proving . . . that she suffered past persecution." Id.

It is unclear from this discussion to what extent the BIA relied upon the IJ's decision in reaching its own conclusion.[2] The BIA did not indicate that it affirmed the

_____

[2]The exception to this conclusion concerns the IJ's determination that Wang was required to corroborate her testimony that it is unlawful for unmarried couples to cohabit in China. The BIA did not adopt this portion of the IJ's analysis, and so we need not determine whether this finding constitutes error. However, we note that we have doubts as to the reasonableness of requiring Wang to corroborate a fact that is hardly central to her claim that, as an unmarried pregnant woman, she was subject to a forced abortion and further persecution. There is no dispute that Wang was considered unmarried at the relevant time period, and the record contains evidence supporting the fact that it was illegal for unmarried women to become pregnant, including the fine receipt for being

7

IJ's decisions for the reasons the IJ set forth, and the BIA referred to evidence that the IJ failed to address in his decision. However, the BIA did not conduct its own legal analysis before affirming the IJ's decision with respect to the corroboration issue. The BIA did not explain why the proffered corroboration was insufficient, nor did it include any discussion that demonstrates that it exercised its duty to analyze the issue.[3] The BIA's failure to explain the basis for its decision that the corroborating evidence fell short of the burden of proof makes it impossible for us to review meaningfully that decision. In such circumstances, we must vacate the BIA's decision and remand the matter "so that the BIA can further explain its reasoning." Kayembe v. Ashcroft, 334 F.3d 231, 238 (3d Cir. 2003) (holding that BIA's generic assertion that petitioner failed to meet his burden of proof, without further explanation, rendered BIA's decision unreviewable); see also Awolesi v. Ashcroft, 341 F.3d 227, 228-29 (3d Cir. 2003) ("While we give deference to the decisions of the BIA . . . we cannot give meaningful review to a decision in which the BIA does not explain how it came to its conclusion."); Abdulai, 239 F.3d at 555 (vacating and remanding when the BIA's failure to explain its rationale made meaningful review

_____

"pregnant without permission," and the Country Report, which states that "it continued to be illegal in almost all provinces for a single woman to have a child." JA 115, 198.

[3]We note that the IJ appears to have discounted the letters from Wang's father and aunt solely on the ground that they constitute hearsay. See JA 34-35 ("[T]hese letters are from people who are not here . . . to be cross-examined in Court."). We have held that an IJ should not perfunctorily reject evidence simply because of its hearsay nature. Dia v. Ashcroft, 239 F.3d 542, 554 (3d Cir. 2001). As noted, we are unable to discern whether the BIA relied on this portion of the IJ's analysis.

impossible). Though we will not generally disturb a decision by the BIA merely because it could have provided a more in-depth analysis, see Toussaint, 455 F.3d at 414 (quoting Sevoian v. Ashcroft, 290 F.3d 166, 178 (3d Cir. 2002)), the agency must at least sufficiently set forth its "reasoning in a manner that permits a reviewing court to discern the 'basis of its decision.'" Kamara v. Att'y Gen., 420 F.3d 202, 212 (3d Cir. 2005) (quoting Dominguez v. Ashcroft, 336 F.3d 678, 680 (8th Cir. 2003)). Accordingly, we will vacate the BIA's order with respect to Wang's asylum and withholding claims and remand in order to give it an opportunity to do so.

B.

We conclude that the BIA's CAT analysis suffers from the same deficiencies. With respect to Wang's CAT claim, the BIA stated, "the respondent has not established that she more likely than not faces 'torture' as defined by regulation, upon removal." JA 3. The BIA also noted that Wang had not claimed to have been tortured in the past, nor did she assert that she would face torture upon return to China. It appears that the BIA failed to consider whether Wang's allegations of coercive family planning practices in China constituted a claim of torture, but it is impossible for us to know with any certainty what the BIA's rationale was without further explanation. Thus, we will vacate the BIA's order regarding Wang's CAT claim and remand.

C.

9

In light of our decision to remand for further proceedings, we provide the following guidance to the BIA.

Before concluding that an applicant's claim fails for lack of corroboration, an IJ is required to conduct the following three-part inquiry: (1) identify the facts for which it is reasonable to expect corroboration; (2) determine whether the applicant has corroborated those facts; and if not, (3) analyze whether the applicant has adequately explained his or her failure to provide the corroboration. Sandie, 562 F.3d at 252-53 (citing Abdulai, 239 F.3d at 554).[4] "Additionally, the IJ must give the applicant notice of what aspects of the applicant's testimony need corroboration. If the applicant cannot produce corroborating evidence, the IJ must also afford the applicant an opportunity to explain why." Id. at 253. The IJ did not engage in this inquiry and neither did the BIA. In these circumstances, we are required to vacate the BIA's decision and remand for further analysis. Toure v. Att'y Gen., 443 F.3d 310, 323-24 (3d Cir. 2006); Abdulai, 239 F.3d at 555.

The first step in the three-part inquiry requires the IJ to identify the specific facts for which corroboration was sought. Rather than explaining which of the facts Wang alleged required corroborating proof, the IJ here simply required Wang's husband's appearance. See Abdulai, 239 F.3d at 554 (finding error for failure to articulate "what

---

[4]The Attorney General argues that the Abdulai test does not apply to post-REAL ID Act cases. Att'y Gen. Br. at 16. However, we have already held that "the REAL ID Act does not change our rules regarding the IJ's duty to develop the applicant's testimony, and in particular, to develop it in accord with the Abdulai steps." Chukwu, 484 F.3d at 192.

particular aspects of Abdulai's testimony it would have been reasonable to expect him to corroborate" (emphasis in original)).  On remand, the BIA should be mindful of the distinction between identifying specific aspects of an applicant's testimony that require corroboration and demanding the appearance of a particular witness.  Furthermore, the BIA should consider whether Wang was given notice of which specific facts needed corroboration, as well as whether she was given an opportunity to explain her failure to provide corroborating proof.  See Sandie, 562 F.3d at 253.

IV

For the foregoing reasons, we will grant Wang's petition, vacate the BIA's decision, and remand for further proceedings consistent with this opinion.