NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3850
_____

PUCUO DAWA, Petitioner

v.

ATTORNEY GENERAL OF
THE UNITED STATES, Respondent

_____

On Petition for Review of a Final Order
of the Board of Immigration Appeals
Immigration Judge:  Honorable Henry S. Dogin
(No. A088-533-371)
_____

Submitted Under Third Circuit LAR 34.1(a)
November 15, 2011
_____

Before:  McKEE, Chief Judge, RENDELL, and AMBRO, Circuit Judges

(Opinion filed: November 30, 2011)
_____

OPINION
_____

AMBRO, Circuit Judge

Pucuo Dawa seeks review of a final order of the Board of Immigration Appeals

("BIA") denying his request for asylum, withholding of removal, and protection under

the Convention Against Torture ("CAT").  The Immigration Judge ("IJ"), as affirmed by

the BIA, found that Dawa — a self-identified Tibetan dissident — did not credibly establish that the Chinese government persecuted him in the past nor did he credibly establish a well-founded fear that the Chinese government will persecute him in the future. In addition, the IJ and the BIA found that Dawa failed to establish a clear probability that his life or freedom would be threatened if he returned to China, that he was tortured in the past, or that it is more likely than not that he will be tortured in the future. Because the evidence does not compel a contrary conclusion, we deny the petition for review.

I.

Because we write solely for the parties, we set forth only those facts necessary for our decision. Dawa was admitted to the United States in February 2007 on a religious worker visa. In October 2007, he filed an affirmative application for asylum, withholding of removal, and relief under the CAT. Dawa's asylum officer denied his application because he failed to establish his identity as a Tibetan. In November 2007, the Department of Homeland Security ("DHS") served Dawa with a Notice to Appear, alleging that he did not fulfill the requirements of his religious worker visa and was therefore out of status and removable. After two preliminary hearings, Dawa testified before an IJ in November 2008 as the sole witness in support of his applications for relief from removal. The IJ found Dawa not credible, denied all forms of relief, and ordered him removed. The BIA dismissed his appeal and this petition for review followed.

At the removal hearing, Dawa testified that he is an ethnic Tibetan who was forced to flee China because he is an advocate for Tibetan independence. He did not produce

2

his birth certificate or his Chinese identification card, which would indicate any Tibetan ethnicity. His passport makes no mention of Tibetan ethnicity even though, as Dawa admits, the Chinese government would have relied on the information on his identification card when creating his passport. Dawa testified that he was born in Khula Shan Village in Sichuan Province; however, his green book (a document issued by the de facto Tibetan government in exile) lists his birthplace as Oatqku.

According to his testimony, Dawa was arrested, interrogated, and detained for over three months in 2001 for distributing pamphlets advocating Tibetan independence in Lithang, a town located in the Ganzi Tibetan Autonomous Prefecture. During his detention, Dawa claims he was physically abused and threatened with death. After his release, he continued his nomadic lifestyle with his wife and children, traveling throughout Sichuan Province and other parts of China. Dawa returned to Lithang in August 2006, scattering flyers advocating for a free Tibet. Several months later he met a Buddhist monk in Beijing who helped him obtain his passport and religious worker visa. After he arrived in the United States in February 2007, Dawa continued his advocacy by participating in demonstrations against the Chinese government. He testified that a few weeks before his hearing a man named Tharchen, a Tibetan living in New York who did not testify or submit any affidavits, supposedly spoke on the phone with others in Lithang who informed Dawa that the police were searching for him.

When denying Dawa's claims for relief, the IJ expressed doubt that he was in fact Tibetan because he provided no supporting documentation and his testimony about his birthplace conflicted with his green book. Nevertheless, the IJ assumed Dawa was

3

Tibetan and found that he did not meet his burden of establishing asylum eligibility. With respect to past persecution, the IJ found it implausible that the Chinese government would have allowed Dawa to continue traveling throughout the country without incident from 2001 to 2006 if he was in fact arrested and detained in 2001 for dissidence. In addition, the IJ concluded that Dawa did not meet his burden of showing a well-founded fear of future persecution because the IJ did not believe that there was credible evidence that anyone was looking for Dawa in China. The IJ also denied Dawa's CAT claim because Dawa did not show that the Chinese government would torture him if he returned to China.

The BIA dismissed Dawa's appeal. It found that the IJ properly considered the totality of the circumstances in finding that Dawa lacked credibility based on problems with his evidence, portions of his testimony, and inconsistencies in the record. The BIA noted that Dawa did not present reasonably available corroborating evidence nor did he claim that such evidence was not reasonably available or offer a sufficient explanation, when given the opportunity, as to why he did not submit more evidence. The BIA also agreed with the IJ's factual findings and legal conclusions regarding Dawa's CAT claim.

II.

The BIA had jurisdiction under 8 C.F.R. § 1003.1(b)(3) to review the IJ's removal decision. We have jurisdiction under 8 U.S.C. § 1252 to review the BIA's final order of removal.

"[W]hen the BIA both adopts the findings of the IJ and discusses some of the bases for the IJ's decision, we have authority to review the decisions of both the IJ and

4

the BIA." *Chen v. Ashcroft,* 376 F.3d 215, 222 (3d Cir. 2004). We review legal conclusions *de novo. Toussaint v. Att'y Gen.*, 455 F.3d 409, 413 (3d Cir. 2006). We review factual findings, including adverse credibility determinations, under the substantial evidence standard. *Sandie v. Att'y Gen.,* 562 F.3d 246, 251 (3d Cir. 2009). This is an "extraordinarily deferential standard." *Id.* (quoting *Chen*, 376 F.3d at 226). We are required to afford the IJ's adverse credibility determinations such great deference so long as the IJ provides "specific, cogent reasons" why the applicant is not credible. *Chukwu v. Att'y Gen.*, 484 F.3d 185, 189 (3d Cir. 2007). If those reasons are provided, we may not overturn an adverse credibility determination unless we conclude that "any reasonable adjudicator would be *compelled* to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B) (emphasis added). To reverse an adverse credibility finding, "the evidence of credibility must be so strong . . . that in a civil trial [the applicant] would be entitled to judgment on the credibility issue as a matter of law." *Chen,* 376 F.3d at 222.

### III.

To establish eligibility for asylum, Dawa must show by a reasonable likelihood either that he experienced past persecution or that he has a well-founded fear of future persecution. 8 U.S.C. § 1101(a)(42)(A) & § 1158(b)(1)(A). To establish a well-founded fear of future persecution, he must first "demonstrate a subjective fear of persecution through credible testimony that [his] fear is genuine." *Lie v. Ashcroft,* 396 F.3d 530, 536 (3d Cir. 2005). Then, he must make the objective showing that "'a reasonable person in [his] circumstances would fear persecution if returned to the country in question.'" *Id.* (quoting *Zubeda v. Ashcroft,* 333 F.3d 463, 469 (3d Cir. 2003)).

To establish eligibility for withholding of removal, Dawa must show by a "clear probability that [his] life or freedom would be threatened" in China. *Zubeda v. Ashcroft,* 333 F.3d 463, 469 (3d Cir.2003) (internal quotation marks omitted). A "clear probability" means that it is "more likely than not" that he would be subject to persecution. *Id.* Similarly, to establish eligibility for relief under the CAT, Dawa must "establish that it is more likely than not that he . . . would be tortured if removed to" China. 8 C.F.R. § 1208.16(c)(2). The "clear probability" standard required for withholding of removal is a "more rigorous" standard than the "well-founded fear" standard for asylum. *Zubeda*, 333 F.3d at 469. Thus, if Dawa fails to meet the latter standard, he necessarily will fail to meet the clear probability standard required for withholding of removal. *Id.* at 469-70.

Under the REAL ID Act of 2005, which applies here, credibility determinations in relation to applications for asylum must be made "[c]onsidering the totality of the circumstances," and may be based on "the inherent plausibility of the applicant's . . . account, the consistency between the applicant's . . . written and oral statements . . ., the consistency of such statements with other evidence of record . . ., and any inaccuracies or falsehoods in such statements." 8 U.S.C. § 1158(b)(1)(B)(iii). The trier of fact may make the assessment "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor." *Id.* Even if the applicant gives otherwise credible testimony, the trier of fact may require the applicant to submit corroborating evidence, unless the applicant does not have the evidence or cannot reasonably obtain the evidence. 8 U.S.C. § 1158(b)(1)(B)(ii).

6

The IJ found that Dawa failed to establish past persecution because the IJ considered implausible Dawa's testimony that he had been detained and fingerprinted by Chinese authorities in 2001, but nonetheless was able to continue traveling as a known dissident throughout China and Tibet for the next five years without incident. After reviewing the record, we cannot say that no reasonable factfinder would find Dawa's testimony to be incredible or (put differently) that a reasonable factfinder would be compelled to find in Dawa's favor.

In addition, Dawa failed to meet his burden of proof with respect to future persecution because he did not present corroborating evidence that appears to have been reasonably available to him. Dawa could have presented testimony or an affidavit from Tharchen, who was just across the Hudson River in New York City, but he did not. As the IJ and the BIA noted, Tharchen could have spoken to whether Chinese authorities were in fact looking for Dawa and how (and from whom) he obtained that information. Dawa has not offered a sufficient explanation as to why he did not and could not submit further evidence from Tharchen.

Neither the IJ nor the BIA committed reversible error in finding that Dawa did not credibly establish that (1) he suffered past persecution, (2) he has a well-founded fear of future persecution, (3) there is a clear probability that his life or freedom would be threatened if he returned to China, (4) he was tortured in the past, or (5) it is more likely than not that he will be tortured in the future. Accordingly, we deny Dawa's petition for review.